IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANDREI RUS,<br><br>Plaintiff,<br><br>v.<br><br>LITHIA MOTORS, INC., ET AL.,<br><br>Defendants. | CIV. NO. 26-00136 JMS-KJM<br><br>ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS, ECF NO. 9 |

**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS, ECF NO. 9**

## I. INTRODUCTION

Pro se Plaintiff Andrei Rus ("Plaintiff") brought this suit alleging unpaid compensation and wrongful termination claims against former employer Lithia Motors, Inc., an Oregon corporation, and Lithia of Honolulu-V, LLC, a Hawaii limited liability company ("Defendants"). Pursuant to 9 U.S.C. §§ 2–4 of the Federal Arbitration Act ("FAA") and Hawaii Revised Statutes ("HRS") § 658A-7, Defendants seek to compel arbitration. *See* ECF No. 9 ("Motion to Compel Arbitration"). Limited discovery revealed that there is no genuine issue of material fact as to the disputed formation of the subject arbitration agreement. Accordingly, as discussed below, Defendants' Motion to Compel Arbitration is GRANTED. Furthermore, the court STAYS these proceedings.

## II. BACKGROUND

### A. Factual Background

Plaintiff alleges that Defendants failed to maintain a safe workplace, retaliated against him, and committed wage violations during his employment as an automobile sales associate at Defendants' Honolulu dealership from July 2024 until October 2024. *See* ECF No. 8; *see also* ECF No. 35-1 at PageID.253 (Rummer Declaration ("Decl.") ¶ 8) (providing period of Plaintiff's employment). Specifically, Plaintiff alleges that Defendants permitted unlawful vaping inside enclosed office spaces, triggering Plaintiff's sensitivity to nicotine smoke and causing injury; that he made "protected complaints" about Defendants' conduct to management; that he experienced hostile conduct when a co-worker attempted to provoke a physical altercation and did not properly prepare vehicles assigned to Plaintiff; and that Defendants retaliated by interfering with Plaintiff's sales transactions, diverted or withheld commissions, and subjected him to increased scrutiny. ECF No. 8 at PageID.44–45. Plaintiff alleges that Defendants terminated him "in retaliation for protected activity." *Id*. at PageID.45.

As for arbitration and the subject agreement, Plaintiff's electronic signature is affixed to Defendants' conspicuously titled "Lithia & Driveway Binding Arbitration Agreement." *See* ECF No. 9-2 at PageID.75. Its preamble provides: "In consideration of my employment and the mutual promises contained herein, I and Honolulu Buick GMC Cadillac ('Company'), including its affiliates,

parents, subsidiaries, predecessors, successors, owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans (collectively 'the Company'), agree . . . ." ECF No. 9-1 at PageID.72 (Pitzak Decl. ¶ 3); *see also* ECF No. 9-2 at PageID.75. The "Mandatory Arbitration" provision of the agreement binds signatories as follows:

> I and Company both agree that, subject to the Exclusions described in this Agreement, any dispute, controversy, or claim arising out of or related to my employment, including regarding the terms of my own pay plan, termination from employment, or any other association I have with the Company shall be finally resolved by binding arbitration in accordance with the then-current International Institute for Conflict Prevention and Resolution ("CPR") Administered Employment Arbitration Rules (the "Rules") (including the then-current CPR Due Process Protections).

ECF No. 9-2 at PageID.75. The signature page also contains the following acknowledgment:

> I understand and agree that by entering into this Arbitration Agreement and subject to the Exclusions set forth in this Agreement, I and the Company are voluntarily waiving our respective right to bring such claims to state or federal court, including any right to a jury trial. I understand that I have or may consult with an attorney concerning the terms of this Arbitration Agreement, and by entering into this Agreement, I agree that I have had an adequate opportunity to do so, and that I enter into this Arbitration Agreement freely, knowingly, and voluntarily.

*Id*. at PageID.77.

**B. Procedural Background**

On February 11, 2026, Plaintiff filed a "First Amended Complaint" in First Circuit Court, State of Hawaii, asserting: (1) retaliation under the Hawaii Whistleblowers' Protection Act, HRS § 378-62 (count I); (2) Wrongful Termination in Violation of Public Policy (count II); (3) Unpaid Wages and Commissions, HRS chapter 388 (count III); (4) Failure to Maintain a Safe and Lawful Workplace (count IV); and (5) Negligence (count VI). ECF No. 8. In mid-March 2026, Defendants demanded arbitration. Plaintiff refused, claiming that he did "not recall ever being presented with, reviewing or . . . agreeing to arbitrate with Lithia." *See generally* ECF No. 9-1 (Pitzak Decl.).

On March 24, 2026, Defendants removed the matter to federal court. *See* ECF Nos. 1 & 8. On March 30, 2026, Defendants again sought arbitration; again, Plaintiff refused, claiming that the arbitration agreement was "unenforceable and [did] not cover his claims." ECF No. 9-1 (Pitzak Decl. ¶ 4).

On April 7, 2026, Defendants filed this Motion to Compel Arbitration. ECF No. 9. On April 8, 2026, Plaintiff filed an Opposition and "Supplemental Declaration and Notice of Supplemental Facts Relevant to Opposition to the Motion to Compel Arbitration" ("Supplemental Declaration in Opposition"). ECF Nos. 11 & 12. That same day, Plaintiff also filed a "Motion for Leave to File Second Amended Complaint to Correct and Join Proper

Dealership Entity, for Limited Jurisdictional Discovery, and for Remand if Joinder Defeats Diversity." ECF No. 13 ("Motion for Leave to File SAC").

The court deferred consideration of Defendants' Motion to Compel Arbitration pending resolution of Plaintiff's Motion for Leave to File SAC (which was being considered by the magistrate judge), after which the court would permit further briefing on the Motion to Compel Arbitration. *See* ECF No. 14. After the magistrate judge granted that motion, Plaintiff then filed the SAC on May 15, 2026, ECF No. 19, and a "corrected" version on May 18, 2026, ECF No. 22.

On May 26, 2026, Plaintiff filed a Motion to Remand Action to State Court, ECF No. 24, which the court denied on June 24, 2026, ECF No. 33. The court determined that joinder of L253, LLC, did not destroy subject matter jurisdiction and, therefore, did not authorize the court under 28 U.S.C. § 1447(e) to order remand. ECF No. 33 at PageID.236.

On July 13, 2026, Defendants (including Defendant L253, LLC, or "Added Defendant") filed a Reply in support of the Motion to Compel Arbitration, ECF No. 35, and, with the court's permission, Plaintiff filed a Limited Sur-Reply, ECF No. 37.[1] The court held a hearing on August 3, 2026, and—because

---

[1] "[D]istrict courts have the discretion to either permit or preclude a surreply." *Garcia v. Biter*, 195 F. Supp. 3d 1131, 1134 (E.D. Cal. 2016). Because Defendants' Reply contained what the court construed as "new evidence"—the Declaration of Michelle Rummer, Senior Manager, People Operations for Lithia Motors Support Services, Inc., which explained Defendants' onboarding system and audit trail—the court, in its discretion and as provided in Local Rule 7.2,

(continued . . . )

formation of the arbitration agreement was at issue—established deadlines for the parties to conduct limited discovery pursuant to 9 U.S.C. § 4, and for supplemental briefing.[2,3] After limited discovery was completed, the parties filed supplemental briefs on September 4, 2026, ECF No. 46, and September 8, 2026, ECF No. 47. The court decides the Motion without further oral argument pursuant to Local Rule 7.1(c).

## III. <u>LEGAL STANDARDS</u>

### A. Statutory Framework, 9 U.S.C. § 4[4]

A written arbitration agreement within the scope of the FAA "shall be valid, irrevocable, and enforceable," except "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Any party "aggrieved by the alleged . . . refusal of another to arbitrate" may petition a district court for an order compelling arbitration in the matter provided for in the agreement. *Id.* § 4. "The FAA 'mandates that district courts *shall* direct the parties to proceed to

---

permitted Plaintiff to file a surreply. *See Paxon v. Live Nation Ent.*, 778 F. Supp. 3d 1113, 1133 (D. Nev. 2025).

[2] The Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, provides for limited discovery in connection with a motion to compel arbitration if the nonmovant raises a genuine issue as to the "the making of the arbitration agreement." *See, e.g.*, *M.S. Aerospace Inc. v. Space Exploration Tech. Corp.*, 834 F. Supp. 3d 947, 956 (C.D. Cal. 2026). Here, Defendants did not object to Plaintiff's request for limited discovery.

[3] Defendants produced over 300 pages of discovery, the "key evidence" being the Rummer Declaration in Defendants' reply. *See* ECF No. 35-1 at PageID.251–258 (reply); *see also* ECF No. 46 at PageID.292 n.3 (supplemental brief).

[4] The parties do not dispute that the FAA applies to the arbitration agreement at issue.

arbitration on issues as to which an arbitration agreement has been signed.'" *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

Generally, "in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

"Even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate. Without an agreement to arbitrate, a court may not force parties to engage in arbitration." *Siopes v. Kaiser Found. Health Plan, Inc.*, 130 Haw. 437, 446, 312 P.3d 869, 878 (2013) (quoting *Luke v. Gentry Realty, Ltd.*, 105 Haw. 241, 247, 96 P.3d 261, 267 (2004) (internal quotation marks omitted)). And "[a]lthough their terms are not identical, both the FAA and HRS ch. [658A] interpose a written and otherwise valid contract to arbitrate as a precondition to enforcement." *Id*. at 446–47, 312 P.3d at 878–79 (quoting *Brown v. KFC Nat'l Mgmt. Co*., 82 Haw. 226, 238, 921 P.2d 146, 158 (1996) (brackets in *Siopes*) (footnotes omitted). *See, e.g.*, *Buckeye Check Cashing,*

*Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.").

The existence of an arbitration agreement is a question for the court, not an arbitrator. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *see also Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 62 (9th Cir. 2007) ("Issues regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the *existence* of a contract as a whole must be determined by the court prior to ordering arbitration."). And courts apply "state-law principles of contract formation" in determining whether the parties have agreed to arbitrate a particular dispute. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024). In turn, under Hawaii law, "a valid and enforceable arbitration agreement 'must have the following three elements: (1) it must be in writing; (2) it must be unambiguous as to the intent to submit disputes or controversies to arbitration; and (3) there must be bilateral consideration.'" *Douglass v. Pflueger Haw., Inc.*, 110 Haw. 520, 531, 135 P.3d 129, 140 (2006) (citing *Brown*, 82 Haw. at 238–40, 921 P.2d at 158–60).

**B. Burdens and Determination of the Existence and Formation of a Valid Arbitration Agreement**

The party seeking to compel arbitration bears the burden of proving

the existence of a valid agreement by a preponderance of the evidence. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023); *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 832 (9th Cir. 2022). And when "the *making* of the arbitration agreement" is at issue, the summary judgment standard applies. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting 9 U.S.C. § 4) (italics added).

To prevail under the summary judgment standard, the party seeking to compel arbitration must show that there is no genuine issue as to any material fact regarding formation of the arbitration contract. *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Conversely, to deny the motion to compel arbitration, rather than hold a trial on arbitration agreement formation, the court must find no reasonable trier of fact could find an agreement was made. *Hansen*, 1 F.4th at 672 (concluding that "once a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved"); *see also Knapke*, 38 F.4th at 831.

In evaluating the record, the court must "give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Oberstein v. Live Nation Ent.*, Inc., 60 F.4th 505, 517 (9th Cir. 2023) (quoting *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991)). To

summarize, while the proponent of an arbitration agreement must prove its existence by a preponderance of the evidence, as to its formation the proponent must demonstrate, under the summary judgment standard, that no genuine issue of material fact exists.

## IV. DISCUSSION

Plaintiff disputes formation of the arbitration agreement—he "does not recall": (1) being presented with it; (2) knowingly placing his signature on it; or (3) knowingly and voluntarily waiving his right to bring employment claims in court pursuant to it. ECF No. 11 at PageID.86. But, as explained below, Defendants have shown, through sufficient evidence, that no genuine issue of material fact exists as to the existence—or formation—of an arbitration agreement between Plaintiff and Defendants. In addition, the court finds that the agreement covers the dispute. *See Brennan*, 796 F.3d at 1130. Consequently, the court rejects Plaintiff's position.

### A. Existence of an Arbitration Agreement

Here, the subject arbitration agreement satisfies *Douglass*. *See* 110 Haw. at 531, 135 P.3d at 140. First, it was in writing. *See* ECF No. 9-2 at PageID.75–77. Second, it provided clear intent to submit disputes to arbitration: "[Plaintiff] and [Defendants] both agree that . . . any dispute, controversy, or claim arising out of or related to [Plaintiff's] employment, including regarding the terms of [his] own pay plan [and] termination from employment . . . shall be finally

resolved by binding arbitration." *Id*. at PageID.75. Third, it contained bilateral consideration: "[Plaintiff] and [Defendants] . . . voluntarily waiv[e] [their] respective right to bring such claims to state or federal court, including any right to a jury trial." *Id*. at PageID.77.

In his post-limited-discovery brief, Plaintiff concedes that he signed the Lithia & Driveway Binding Arbitration Agreement,[5] ECF No. 47 at PageID.298 & 300, but asserts that he remembers only "a minimal onboarding presentation" or "brief interaction." *Id*. at PageID.298. But "mutual assent or a meeting of the minds" is "determined by an objective standard, where '[a] party's words or acts are judged under a standard of reasonableness in determining whether he has manifested an objective intention to agree.'" *Pac. Com. Servs., LLC v. LVI Env't Servs., Inc.*, 2017 WL 2817883, at *4 (D. Haw. June 26, 2017) (quoting *Earl M. Jorgensen Co. v. Mark Constr., Inc.*, 56 Haw. 466, 470, 540 P.2d 978, 982 (1975)). Here, Defendants have offered evidence that shows Plaintiff's assent, through an objective lens, to arbitrate his claims.

Defendants provided the Declaration of Michelle Rummer, Senior

[5] And even if Plaintiff were to fall back on his initial argument that "the signature shown on [the arbitration agreement] . . . is not a signature Plaintiff recalls knowingly placing on that document," ECF No. 11 at PageID.86, such an infirm assertion would not be enough to establish that he had *not* signed the arbitration agreement. *Cf. Shawmut Bank, N.A. v. Kress Assocs.*, 33 F.3d 1477, 1500–01 (9th Cir. 1994) (rejecting testimony that bondholders "could not remember one way or the other" as support for the "negative knowledge" principle—that is, "the absence of a sensory impression is that the event which was not seen or heard did not occur").

Manager, People Operations for Lithia Motors Support Services, Inc. ECF No. 35-1 at PageID.251 (Rummer Decl. ¶ 1). Rummer stated that she has "personal knowledge" based on "corporate records, maintained in the regular course of business." *Id*. at PageID.252 (Rummer Decl. ¶ 1). Rummer's "job is to oversee, manage, and instruct employees who facilitate onboarding procedures within Lithia, inclusive of new hires and promotions." *Id*. at PageID.253 (Rummer Decl. ¶ 6). Rummer testified as to Plaintiff's online onboarding process and execution of the arbitration agreement, thus addressing formation. *Id.* at PageID.254 (Rummer Decl. ¶ 9). And the procedures Rummer describes sufficiently attribute Plaintiff's electronic signature to him under Hawaii's Uniform Electronic Transactions Act, HRS § 489E-9 ("UETA").[6] To wit:

- Plaintiff's onboarding documents included the "employee handbook, offer letter, and the Lithia Motors Binding Arbitration Agreement," which he executed "as part of his employment onboarding" on June 24, 2024. *Id*. at PageID.254 (Rummer Decl. ¶ 9).

---

[6] Hawaii's UETA provides:

> (a) An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.
>
> (b) The effect of an electronic record or electronic signature attributed to a person under subsection (a) is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law.

HRS § 489E-9.

- L253, LLC "uses AdobeSign as its standard platform for securely distributing and obtaining employee signatures on certain employment related documents housed in [the] L253, LLC internal Workday system, including the Arbitration Agreement signed by [Plaintiff]." *Id*. (Rummer Decl. ¶ 10).

- As part of onboarding, "L253, LLC launches all . . . policies in one AdobeSign envelope within its Workday system. L253, LLC then notifies the onboarding employee of the need to review, acknowledge, and electronically execute the policies, via a Workday task." *Id*.

- "[T]o access the policies, the onboarding employee must input their [self-selected] personal, confidential email and password . . . . Based on L253, LLC's policies, [Plaintiff] was the only person who would have had access to his Workday credentials." *Id*.

- "The employee [is] unable to open and review the documents unless and until they sign in to the Workday system using their confidential password." *Id*. Thus, "[Plaintiff] could not review and accept the Arbitration Agreement until he completed these steps. As such, [he] was given the opportunity to log in to his portal and sign and review the documents, including the Arbitration Agreement, and on his own time." *Id*. at PageID.254–255 (Rummer Decl. ¶ 10).

- "Employees . . . sign the Arbitration Agreement through their portal via the AdobeSign program that indicates acceptance to the terms. The signed Arbitration Agreement is then saved and returned with [the employee's] signature in their portal. If [an employee] had questions regarding the arbitration agreement, they [can] direct them" to Rummer's team. *Id*. at PageID.255 (Rummer Decl. ¶ 11).

- Rummer stated that Plaintiff "did not have any questions or concerns regarding the Arbitration Agreement and provided his e-signature on the document on June 24, 2024." *Id*.

Attached to Rummer's Declaration is the Adobe Acrobat Sign certificate

audit trail of Plaintiff's access and signature to the arbitration agreement. ECF No. 35-1 at PageID.258. Rummer attests to the audit trail, which reflects that on June 24, 2024, within a two-hour time span, Plaintiff received, accessed, and signed the arbitration agreement:

- 3:38:35 PM PDT—"Document created by Workday Litha [sic] Motors . . . ."
- 5:17:24 PM PDT—"Agreement viewed by anrus808@gmail.com."
- 5:18:02 PM PDT—"Signer anrus808@gmail.com entered name at signing as Andi Rus."
- 5:18:04 PM PDT—"Document e-signed by Andi Rus (anrus808@gmail.com)."
- 5:18:04 PM PDT—"Agreement completed."

*Id.*; *see also id.* at PageID.255 (Rummer Decl. ¶ 12). In accordance with Hawaii's UETA, Defendants have demonstrated (1) "the efficacy of [its] security procedure[s]" in attributing Plaintiff's electronic signature to him alone, and (2) Plaintiff's assent based on the "context and surrounding circumstances at the time" he signed the arbitration agreement. HRS § 489E-9(b).

**B. The Arbitration Clause Encompasses the Disputed Issue**

In determining whether an arbitration agreement encompasses the dispute at issue, courts must first examine the content of the arbitration clause and then review the nature of the dispute. *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1101 (9th Cir. 2023).

"[W]hen examining the scope of an arbitration agreement, '[a]s with any other contract dispute, [courts] first look to the express terms [of the parties' agreement].'" *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 796 (9th Cir. 2017) (quoting *Chiron Corp v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000) (first brackets added)). Here, the arbitration clause states that "any dispute, controversy, or claim arising out of or related to [Plaintiff's] employment, including regarding the terms of [his] own pay plan, termination from employment, or any other association [he has] with [Defendants] shall be finally resolved by binding arbitration." ECF No. 9-2 at PageID.75. No party disputes that the nature of the dispute here falls squarely within the scope of the arbitration clause. Further, "[a]t the federal and state level, there exists a strong policy in favor of arbitration, such that any doubt concerning whether a dispute is covered by an arbitration agreement should be resolved in favor of arbitrability." *Gabriel v. Island Pac. Acad., Inc*., 140 Haw. 325, 335, 400 P.3d 526, 536 (2017)). Accordingly, the arbitration clause encompasses the dispute at issue.

**C. Plaintiff Presents No Meritorious Contract Defenses**

Under Hawaii law, "[t]he party seeking to compel arbitration carries the initial burden of establishing that an arbitration agreement exists," and if met, the burden then "shifts to the opposing party to present evidence on its defenses to the arbitration agreement." *Siopes*, 130 Haw. at 446, 312 P.3d at 878 (citations and

quotation marks omitted); *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."). Plaintiff has not asserted, much less met his burden of presenting evidence, on any contract defenses, such as unconscionability.

**D. The Arbitration Clause Is Enforceable as to Nonsignatories**

Plaintiff also argues that Defendants Lithia Motors, Inc., and Lithia of Honolulu-V, LLC, cannot enforce the arbitration agreement which identifies only "'Honolulu Buick GMC Cadillac' as the contracting 'Company[.]'" ECF No. 11 at PageID.83; ECF No. 12 at PageID.99; *see also* ECF No. 9-2 at PageID.75. Specifically, Plaintiff argues that the "broad affiliate language in the document"[7] does not relieve Defendants of "the burden to supply competent evidence showing that they are, in fact proper parties" to the arbitration agreement. ECF No. 11 at PageID.87. Defendants respond that Added Defendant L253, LLC, was Plaintiff's employer (doing business as "Honolulu Buick GMC and Cadillac"). ECF No. 35-1 at PageID.253 (Rummer Decl. ¶ 8). They argue that L253, LLC, therefore, has a right to compel arbitration. The court agrees.

[7] *See* ECF No. 9-2 at PageID.75 ("I and Honolulu Buick GMC Cadillac ('Company'), including its affiliates, parents, subsidiaries, predecessors, successors, owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans (collectively 'the Company') . . . .").

"The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). And under Hawaii law, "a nonsignatory agent has standing to invoke an arbitration agreement if one of the following two conditions is met":

> First, when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. Second, when the signatory to the contract containing a[n] arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

*Luke*, 105 Haw. at 248, 96 P.3d at 268 (quoting *Westmoreland v. Sadoux*, 299 F.3d 462, 467 (5th Cir. 2002)). That is, "a signatory to an arbitration agreement is estopped from refusing to arbitrate claims against a nonsignatory when the signatory's claims are intertwined with, rather than independent of, the agreement containing the arbitration clause." *Id*. Thus, "[n]onsignatory successors . . . are entitled to compel arbitration under clauses signed by the corporations whose liability they are alleged to have assumed." *S. Glazer's Wine & Spirits v. Denyer*, 2017 WL 6417810, at *6 (D. Haw. Dec. 15, 2017) (quoting *Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*, 2016 WL 6082415, at *9 (N.D. Cal. Oct. 18, 2016)).

Here, the business "affiliates" pertinent to the arbitration agreement are not so complex. Added Defendant, L253, LLC, which does business as "Honolulu Buick GMC and Cadillac," was Plaintiff's employer. ECF No. 35-1 at PageID.253 (Rummer Decl. ¶ 8); *see also* ECF No. 27 at PageID.199 (Defendants' Answer to Corrected SAC ¶ 13). As to the other named Defendants, Edward Impert, Vice President, General Counsel for Lithia Motors, Inc., testified that

> Lithia Motors, Inc. is the sole member of the LLC known as 'L253, LLC,' which does business as 'Honolulu Buick GMC and Cadillac.' There are no other members of that LLC other than Lithia Motors, Inc. Lithia Motors, Inc., is also the sole member of the LLC known as Lithia Honolulu-V, LLC.

ECF No. 16-1 at PageID.138–139 (Impert Decl. ¶ 5).

It is clear, "looking at the relationship between the parties and their connection to the alleged violations[,]" *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 875 (9th Cir. 2021), that Plaintiff's claims against non-signatory L253, LLC—whose liability Honolulu Buick GMC Cadillac is "alleged to have assumed," *S. Glazer's Wine & Spirits*, 2017 WL 6417810, at *6 (citation and quotation marks omitted)—is "intertwined with, rather than independent of, the agreement containing the arbitration clause." *Luke*, 105 Haw. at 248. Accordingly, Defendants (including Added Defendant L253, LLC) can enforce the arbitration agreement.

**E. Stay of Proceedings and Administrative Closing**

In finding that the arbitration agreement is valid and enforceable, the court is required to stay proceedings as to the applicable parties, rather than dismiss them. "When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024). The court thus stays the current proceedings.

In addition, it is appropriate to administratively close this action because the dispute is subject to arbitration. *See, e.g.*, *Penn West Assocs., Inc. v. Cohen*, 371 F.3d 118, 127, 128 (3d Cir. 2004) (explaining that administrative closings "comprise a familiar, albeit essentially ad hoc, way in which courts remove cases from their active files without making any final adjudication" and are "an administrative convenience which allows the removal of cases from the [docket] in appropriate situations[.]") (citations omitted).

The closing of each new case is solely an administrative matter and does not impact, in any manner, any party's rights or obligations, and does not alter in any manner any previous rulings by the court. *See Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005) (discussing administrative closures, stating that "[a]n order administratively closing a case is a docket management tool that has no jurisdictional effect").

Defendants shall file a status report every 90 days, beginning 90 days from this Order, explaining the status of the arbitration.

## V. CONCLUSION

Based on the foregoing, Defendants' Motion to Compel Arbitration, ECF No. 9, is GRANTED and this action is STAYED pending arbitration. The Clerk is directed to administratively CLOSE this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 18, 2026.

/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge